[No. A061034. First Dist., Div. One. Sept. 22, 1994.]

EDWARD G. DUMIN et al., Plaintiffs and Appellants, v.
OWENS-CORNING FIBERGLAS CORPORATION, Defendant and
Respondent.

**COUNSEL**

Daniel U. Smith, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Harry F. Wartnick and Steven M. Harowitz for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Mark Snyderman, Wright, Robinson, McCammon, Osthimer & Tatum and Peter B. Logan for Defendant and Respondent.

**OPINION**

**STRANKMAN, P. J.**—In an asbestos personal injury action and related claim, a partial directed verdict was entered in favor of an asbestos insulation distributor for plaintiff's failure to prove exposure to the distributor's product. We, too, find insufficient evidence of exposure and affirm the judgment.

### STATEMENT OF FACTS

Edward G. Dumin (Dumin) sued for personal injuries sustained in working with asbestos products, and his wife, Doris, sought damages for loss of consortium in a related action consolidated in the trial court. A number of asbestos manufacturers and distributors were sued, but trial proceeded against respondent Owens-Corning Fiberglas Corporation (OCF) alone.

From April 1953 until May 1958, OCF was a nonexclusive distributor of Kaylo, an asbestos insulation product made by Owens-Illinois Glass Company (OI). In May 1958, OCF became the manufacturer of Kaylo and continued its distribution.

Dumin, 63 years old at the time of trial, suffers from mesothelioma, an asbestos cancer. Dumin served in the Navy for 20 years from 1945 to 1965, working as a boiler tender and electronics technician aboard several ships and regularly handling asbestos insulation while a boiler tender. Dumin claims exposure to Kaylo while aboard the Pocono in 1953 and 1954 and while aboard the Agerholm in 1964 and 1965.

Dumin cannot identify Kaylo as one of the asbestos products to which he was exposed, but instead relies upon circumstantial evidence to establish exposure. In proving exposure to Kaylo aboard the Pocono, relevant on this appeal, Dumin introduced a witness's deposition testimony taken in a different asbestos case seven years earlier.[1] The witness, David Durham, was a Norfolk Naval Shipyard mechanic, where the Pocono had its home port.

Durham prepared a long list of "some of the insulation" materials used at the Norfolk Naval Shipyard during his tenure there from 1942 to 1975. The list included OCF Kaylo, but Durham had difficulty identifying the time period of OCF Kaylo's presence at the shipyard, as opposed to Kaylo generally, which was manufactured by OI until 1958 and distributed by both OI and respondent OCF from 1953 until 1958.

In answer to a question as to the time OCF Kaylo was "customarily used" aboard ships at Norfolk Naval Shipyard, Durham replied: ". . . I think, Owens-Corning [OCF]—the best I recall, Owens-Corning Kaylo somewhere in the late '40s or early '50s." Durham explained that the product was simply called Kaylo, without reference to its distributor, and only in later years did Durham apply the distributor to the product. Upon further questioning, Durham was able to state that he saw OCF's name on Kaylo boxes at the shipyard. But the questioning reverted back to general product trade names, and Durham was asked the time period that Kaylo products were customarily used aboard ships at the shipyard. Durham stated: "Well, they have been used from, like I say, since I would say somewhere around the '50s, 1950, or somewhere along about that, on up until I left the shipyard." At trial, OCF introduced an earlier deposition from yet another asbestos case in which

[1] The deposition testimony was initially excluded by the trial court, but the parties then stipulated to permit its admission. (Evid. Code, § 1291.)

Durham said "[t]he first recollection that I know of using Kaylo was in the middle '60s."

OCF also presented a marine engineer who was cross-examined about the sources of repair supplies for a ship, like the Pocono, home ported at Norfolk Naval Shipyard. The engineer said it was "[q]uite probable" that supplies taken aboard ship would be the same as those used at the home port shipyard.

OCF moved for nonsuit, but the ruling was apparently deferred until after presentation of the defense case, at which time motions for nonsuit and directed verdict were considered together. The court initially denied the motions, finding sufficient evidence to support a jury determination that Dumin was exposed to OCF Kaylo aboard the Agerholm. In response to an inquiry from OCF's counsel, the court said it was deferring the question of whether Dumin could argue exposure aboard other ships. The court later ruled that there was insufficient evidence that Dumin was exposed to OCF Kaylo on any ship other than the Agerholm, and so prohibited argument from Durham's testimony that Dumin was exposed aboard the Pocono. The parties understand the court's ruling to represent a nonsuit or directed verdict on the issue of Dumin's exposure to OCF Kaylo aboard the Pocono. The remaining issue of exposure aboard the Agerholm was submitted to the jury, which returned a verdict in OCF's favor upon the finding that Dumin's injury was not caused by the defective OCF Kaylo. Dumin appealed, and contests the trial court's ruling finding insufficient evidence of exposure aboard the Pocono.

### DISCUSSION

A judgment of nonsuit or directed verdict is proper if there is no evidence of sufficient substantiality to support a verdict in plaintiff's favor after viewing the evidence in the light most favorable to plaintiff, resolving all presumptions, inferences and doubts in plaintiff's favor, and disregarding any conflicting evidence. (*Helm* v. *K.O.G. Alarm Co.* (1992) 4 Cal.App.4th 194, 198, fn. 1 [5 Cal.Rptr.2d 615].) Nonsuit or directed verdict is appropriate where plaintiff's proof raises nothing more than speculation, suspicion or conjecture. (*Ibid.*)

In its best light, the evidence establishes: (1) Dumin was aboard the Pocono in 1953 and 1954, and his duties included making any necessary boiler repairs with insulation materials; (2) the Pocono was home ported at

the Norfolk Naval Shipyard; (3) OCF Kaylo was used at the Norfolk Naval Shipyard as one of many asbestos insulation products at sometime around the early 1950's; and (4) the Pocono's repair supplies were probably received from the Norfolk Naval Shipyard.[2] The question is whether this evidence would support a jury determination that Dumin was exposed to OCF Kaylo, since Dumin must establish exposure to prove that his asbestos disease was caused by OCF's conduct in distributing its product.

■ As recognized by the Ninth Circuit, "[t]wo different approaches have been taken by the courts in determining the sort of evidence an asbestos plaintiff must adduce in order to establish a defendant's products as a legal cause of her injuries." (*In re Hawaii Federal Asbestos Cases* (9th Cir. 1992) 960 F.2d 806, 816-817.) The more stringent approach requires particularized proof that the plaintiff came into contact with the defendant's product. (E.g., *Blackston* v. *Shook & Fletcher Insulation Co.* (11th Cir. 1985) 764 F.2d 1480, 1485.) Under the more lenient approach, it is sufficient if the plaintiff proves the defendant's product was at his or her work site. (E.g., *Lockwood* v. *AC & S, Inc.* (1987) 109 Wn.2d 235 [744 P.2d 605].) The leniency of this latter approach is perhaps overstated in our general proposition, since *Lockwood* uses a number of factors to judge the sufficiency of evidence of causation and warns that resolution depends on the particular circumstances of each case. (*Lockwood* v. *AC & S, Inc., supra*, 744 P.2d at p. 613.) But even postulating the most generous application of a lenient causation standard does not avail Dumin. There is simply insufficient evidence that OCF Kaylo was aboard the Pocono.[3]

■ In placing OCF Kaylo at the Norfolk Naval Shipyard, Durham's testimony established only that OCF Kaylo was "customarily used" at the Norfolk Naval Shipyard "around" the early 1950's. He did not say with even a semblance of certainty that OCF Kaylo was used at the shipyard in 1953 and 1954 when the Pocono was home ported there. Durham said OCF Kaylo was customarily used at the shipyard "somewhere in the late '40s or early '50s," but admitted that he had not ascribed company names to the Kaylo product until he became an instructor at the shipyard in the 1960's. In a resumed examination which inquired about Kaylo generally, not OCF Kaylo, Durham said the product was customarily used at the shipyard "around the

---

[2]The last fact concerning the probable source of the Pocono's supplies was ascertained during the defense case and would be unavailable to assist Dumin were we to regard the trial court's ruling as a nonsuit. Given uncertainty as to the precise nature of the court's ruling, we will regard it as a directed verdict and give Dumin the benefit of all evidence at trial.

[3]We do not express favor for one analytical approach over the other, but adopt the method of the trial court in evaluating the evidence under the most lenient standard to demonstrate the justness of the directed verdict under any standard.

'50s, 1950, or somewhere along about that . . . ." While Durham saw Kaylo boxes bearing OCF's name, he never testified that the OCF Kaylo boxes were seen in the 1950's. Under other circumstances, such indefinite dating may suffice to identify a defendant's product at a plaintiff's work site. But greater certainty is needed here because OCF did not begin to distribute Kaylo until 1953 and was not the lone distributor of the product in 1953 and 1954.

The uncertain dating of OCF Kaylo's presence at the Norfolk Naval Shipyard grows in significance when combined with other infirmities in Dumin's proof. Even if OCF Kaylo was at the Norfolk Naval Shipyard in 1953 and 1954, it was only one of many asbestos insulation products used at the shipyard. Dumin has pointed to no evidence that OCF Kaylo was a dominant product among the many used at the shipyard. While it is "probable" that the Pocono's supplies were obtained from the shipyard, there is no evidence that OCF Kaylo was among the supplies. Durham, the shipyard mechanic, said OCF Kaylo was used at the shipyard and listed the Pocono as one of hundreds of ships he worked upon, but Durham never testified as to the materials used aboard the Pocono or the date of his work aboard her. The Pocono was home ported at the Norfolk Naval Shipyard, but this fact means only that the ship returned there when not on a mission—the ship did not idle in Norfolk for two years but toured an expanse encompassing the United States East Coast, the Caribbean and the North Atlantic. The record reveals no evidence of the frequency of a ship's return to home port to receive supplies or, more importantly, the frequency and extent of receiving repair supplies such as insulation materials. Dumin did say the Pocono was in the Norfolk Naval Shipyard for repairs during a tender period of one to three months. However, Dumin was aboard the Pocono from 1951 or 1952 until 1954, and Dumin did not specify whether the Norfolk tender period was during 1953 or 1954 when OCF was distributing Kaylo.

In short, a conclusion that Dumin was exposed to OCF Kaylo while aboard the Pocono in 1953 and 1954 would require a stream of conjecture and surmise. Dumin misdirects his energy in denouncing the trial court's ruling as a rejection of circumstantial evidence and an unwarranted demand for direct evidence of causation. The trial court simply required—as we do—that the circumstantial evidence be of sufficient weight to support a reasonable inference of causation. The evidence fails to meet that requirement.

Dumin offers an alternative basis for finding exposure, but that basis is even less substantial than his claimed exposure aboard the Pocono. Dumin

points to Durham's testimony of asbestos dust at the shipyard when ships were being overhauled, and Dumin says the evidence permits the inference that he was exposed to the dust from other ships when the Pocono was home ported at the shipyard.[4] But there is no evidence that OCF Kaylo was the product used in these unspecified ship overhauls performed at uncertain times, and not even evidence that OCF Kaylo was so prominent a product that it was likely used in these overhauls. There is also no evidence that Dumin was near the ships under repair, or even if he was at the shipyard. Dumin himself did not describe asbestos dust at the shipyard or present other evidence that he was likely to be exposed to dust from repairs upon other ships. The record shows that Norfolk Naval Shipyard is a large facility, and a ship can be ported there without being berthed within a zone of industrial activity. Again, only speculation could produce the conclusion that Dumin was exposed to OCF Kaylo dust from other ships under repair at Norfolk Naval Shipyard.

As a final point, Dumin asks us to relieve him of the burden of proving causation under a theory of alternative liability enunciated in *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. (See Rest.2d Torts, § 433B, subd. (3) [embodying rule].) In that case, plaintiff was shot while hunting with two companions who each negligently fired bird shot in plaintiff's direction at about the same time. (*Summers* v. *Tice*, *supra*, 33 Cal.2d at pp. 82-83.) Rather than demand that plaintiff prove which one of the two tortfeasors caused the injury, the court shifted the burden to each tortfeasor either to prove that he had not caused the injury or to bear joint liability in the absence of counter proof. (*Id.*, at pp. 84-88.)

Under the banner of *Summers*, Dumin claims he had only to present evidence that OCF Kaylo was at the Norfolk Naval Shipyard when he was aboard the Pocono, and the burden then shifted to OCF to prove that Dumin was not exposed to its Kaylo. The application of *Summers* to proof of asbestos exposure raises several troublesome legal issues, but the matter may be expeditiously disposed of here on the facts. Contrary to his assertion on appeal, Dumin did not prove that OCF Kaylo was at the shipyard in 1953 and 1954 when the Pocono was home ported there. As discussed above, the evidence placing OCF Kaylo at the shipyard in the early 1950's is tentative and vague, and the evidence of OCF Kaylo at Dumin's work site aboard the Pocono further attenuated. The alternative liability theory acts only to shift the burden of proof from plaintiff to *proven wrongdoers*—plaintiff must still

---

[4]Dumin failed to include this portion of Durham's deposition testimony in the record on appeal, but we will accept his unrebutted characterization of the evidence for purposes of discussion.

prove that all defendants acted tortiously. (*Goldman* v. *Johns-Manville Sales Corp.* (1987) 33 Ohio St.3d 40 [514 N.E.2d 691, 696].) In the context of asbestos injury, plaintiff must prove exposure to asbestos products of a type supplied by defendants. (*Id.*, at pp. 693, 696-697.) Here, there is no proof of Kaylo aboard the Pocono. By analogy to the hunting mishap of *Summers*, there was no proof that OCF ever fired a shot or, indeed, was even in the woods.

## Disposition

The judgment is affirmed.

Newsom, J., and Dossee, J., concurred.