Filed 7/1/14  Certified for publication 7/30/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| VERNA LEE COLLIN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALPORTLAND COMPANY et al.,<br><br>Defendants and Respondents. | C063875<br><br>(Super. Ct. No. 34200900045133CUASGDS) |
| VERNA LEE COLLIN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>J-M MANUFACTURING COMPANY, INC.,<br><br>Defendant and Respondent. | C065180<br><br>(Super. Ct. No. 34200900045133CUASGDS) |

After Loren A. Collin was diagnosed with mesothelioma, he and his wife Verna Lee Collin sued 22 entities for negligence, strict liability, false representation, intentional tort/failure to warn, alter ego, and loss of consortium, alleging Loren was exposed to asbestos from the defendants' products or activities when he worked in various construction trades.[1]

Plaintiff now appeals from the grant of summary judgment in favor of four defendants:  CalPortland Company (CalPortland), Kaiser Gypsum Company, Inc. (Kaiser Gypsum), J-M Manufacturing Company, Inc. (J-MM), and Formosa Plastics Corporation USA (Formosa), named as an alter ego of J-MM.  Plaintiff contends those defendants did not show that plaintiff does not possess and cannot reasonably obtain evidence of exposure to an asbestos-containing product for which defendants are responsible; but even if the burden shifted to plaintiff, the evidence is sufficient to support an inference of exposure.  Plaintiff also claims J-MM and Formosa did not establish that Loren was a sophisticated user who knew or should have known of the potential risks and dangers of using J-MM's asbestos cement pipe.

Our discussion is organized by defendant:  part I addresses CalPortland, part II involves Kaiser Gypsum, and part III pertains to J-MM and its alleged alter ego Formosa. We conclude summary judgment was properly granted in favor of CalPortland and Kaiser Gypsum, because they met their initial burdens on summary judgment and the evidence and reasonable inferences would preclude a reasonable trier of fact from finding (without speculating) that Loren was exposed to one of their asbestos-containing products.

Regarding J-MM and Formosa, however, summary judgment was not proper. The evidence, viewed in the light most favorable to plaintiff, demonstrates a triable issue

---

[1]  This court granted Verna Lee Collin's motion to substitute herself as her husband's successor in interest after he died.  For clarity we will refer to Mr. and Mrs. Collin as "the plaintiff" and to each of them by his or her first name only.

of fact as to whether Loren was exposed to asbestos from a J-MM product. In addition, J-MM and Formosa have not established that they are entitled to summary adjudication as a matter of law based on the sophisticated user defense.

We will affirm the judgments in favor of CalPortland and Kaiser Gypsum and reverse the judgments in favor of J-MM and Formosa.

BACKGROUND

Plaintiff brought a personal injury action against 22 defendants, alleging that Loren developed peritoneal mesothelioma because of occupational exposure to defendants' products or activities from 1955 through 1957 and 1959 through the 1990's. CalPortland, Kaiser Gypsum, J-MM and Formosa are among the named defendants in plaintiff's lawsuit. The complaint alleges counts for negligence, strict liability, false representation, intentional tort/failure to warn, alter ego and loss of consortium.

CalPortland and Kaiser Gypsum separately moved for summary judgment, while J-MM and Formosa separately moved for summary judgment or summary adjudication. Each defendant said plaintiff cannot establish that Loren was exposed to an asbestos-containing product for which the defendant is responsible.

CalPortland argued that despite several opportunities to state facts supporting his claims, Loren did not say he was exposed to "Colton gun plastic cement," which was the only asbestos-containing cement CalPortland manufactured and sold. Plaintiff responded that a trier of fact could infer from the similarities between the plastic cement product Loren said he encountered on jobsites, and Colton gun plastic cement, that Loren was exposed to the CalPortland product.

According to Kaiser Gypsum, it stopped making or selling asbestos products after 1976, and Loren cannot show he encountered a Kaiser Gypsum asbestos product because he cannot say when he encountered their product. Plaintiff countered that although Loren cannot pinpoint exactly when he was exposed to a joint compound manufactured by Kaiser Gypsum, he said he was exposed to dust from Kaiser Gypsum joint compound

during his career in construction from the mid-1950's to 1995, and Kaiser Gypsum manufactured a joint compound containing asbestos from the mid-1950's through 1975. According to plaintiff, a reasonable inference of exposure can be drawn from the fact that during Loren's career in construction, Kaiser Gypsum manufactured a joint compound with asbestos for 20 years, whereas it manufactured an asbestos-free joint compound for only two years.

J-MM's motion for summary judgment or summary adjudication asserted that plaintiff cannot prove J-MM caused the plaintiff's injuries because J-MM was not liable for asbestos cement pipes sold prior to its formation in 1983, and plaintiff has no evidence of any exposure to asbestos cement pipe after 1979. J-MM also argued it had no duty to warn Loren of the potential risks and dangers of working with asbestos cement pipe because Loren was a sophisticated user of the product.

Plaintiff named Formosa as an alter ego of J-MM. Formosa's motion for summary judgment or summary adjudication asserted the same arguments advanced by J-MM.

In opposition to the motions by J-MM and Formosa, plaintiff pointed to Loren's discovery responses which stated that he was exposed to asbestos from Transite asbestos cement pipe through the early 1980's. Plaintiff also pointed to evidence that Transite was a trade name for J-MM's asbestos cement pipe. Regarding the sophisticated user defense, plaintiff said the defense did not apply to their design defect claims and there was no evidence Loren was a sophisticated user of asbestos.

The trial court ruled that each defendant satisfied its initial burden on summary judgment by showing (via Loren's factually insufficient discovery responses) that the plaintiff does not possess and cannot obtain evidence establishing an element of the causes of action, i.e., exposure to the defendant's asbestos-containing product. The trial court further determined that the plaintiff did not satisfy the burden of showing the existence of a triable factual issue with regard to exposure. Accordingly, the trial court granted summary judgment in favor of CalPortland, Kaiser Gypsum, J-MM and Formosa.

4

# STANDARD OF REVIEW

Summary judgment and summary adjudication provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (Code Civ. Proc., § 437c, subd. (f)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (f)(2), (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.) This showing must be supported by evidence, such as affidavits, declarations, admissions, interrogatory answers, depositions, and matters of which judicial notice may be taken. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 850, 855.)

A defendant moving for summary judgment or summary adjudication need not conclusively negate an element of the plaintiff's cause of action. (Code Civ. Proc., § 437c, subd. (f)(2); *Aguilar, supra*, 25 Cal.4th at p. 853.) Instead, the defendant may show through factually devoid discovery responses that the plaintiff does not possess and cannot reasonably obtain needed evidence. (*Aguilar, supra*, 25 Cal.4th at pp. 854-855; *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 101.)

After the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action or affirmative defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.) The plaintiff may not simply rely on the allegations of its pleadings but, instead, must set forth the specific facts showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find

the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

In ruling on the motion, the trial court views the evidence and inferences therefrom in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) If the trial court concludes the evidence or inferences raise a triable issue of material fact, it must deny the defendant's motion. (*Aguilar, supra*, 25 Cal.4th at p. 843; *Saelzler, supra,* 25 Cal.4th at p. 768.) But the trial court must grant the defendant's motion if the papers show there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

We review an order granting summary judgment or summary adjudication de novo. (*Aguilar, supra,* 25 Cal.4th at p. 860.) We independently examine the record to determine whether a triable issue of material fact exists. (*Saelzler, supra,* 25 Cal.4th at p. 767.) The trial court's stated reasons for granting summary judgment or summary adjudication are not binding on us because we review its ruling, not its rationale. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 ["The sole question properly before us on review of the summary judgment is whether the judge reached the right *result* . . . whatever path he might have taken to get there"].)

DISCUSSION

I

Plaintiff contends CalPortland did not satisfy its threshold burden on summary judgment. Plaintiff claims CalPortland failed to show that plaintiff does not have and could not reasonably obtain evidence of exposure to an asbestos-containing CalPortland product.

A plaintiff claiming asbestos-related injuries must establish some exposure to the asbestos-containing product or activity for which the defendant is responsible. (*Rutherford v. Owens-Illinois, Inc*. (1997) 16 Cal.4th 953, 982 (*Rutherford*).) If there has

6

been no exposure, the plaintiff cannot demonstrate that the defendant caused his or her injuries.  (*Whitmire v. Ingersoll-Rand Co*. (2010) 184 Cal.App.4th 1078, 1084.)

Evidence that the defendant propounded sufficiently comprehensive discovery requests and that the plaintiff provided factually insufficient responses can raise an inference that the plaintiff cannot prove causation.  (*Casey v. Perini Corp*. (2012) 206 Cal.App.4th 1222, 1231 (*Casey*).)  In *Casey*, the plaintiff accused the defendant, a general contractor, of exposing him to asbestos at jobsites where the plaintiff worked for a subcontractor.  (*Id.* at p. 1225.)  The plaintiff said he was the only person with knowledge of the amount and extent of the alleged asbestos exposure.  (*Id*. at p. 1231.)  In response to a special interrogatory asking him to state each fact supporting his claim against the defendant, the plaintiff said he worked alongside carpenters and laborers employed by the defendant; in performing their work, the carpenters disturbed the asbestos-containing overspray on the ceiling and caused it to fall on everyone in the area; the defendant's laborers swept the asbestos-containing dust and debris in the plaintiff's presence; and the plaintiff breathed in this dust.  (*Id*. at pp. 1229-1230.)  When asked about the alleged asbestos materials to which he was exposed, the plaintiff admitted he only assumed that the dust and debris he encountered contained asbestos.  (*Id*. at pp. 1229, 1234.)

The appellate court said the plaintiff's discovery responses failed to state specific facts showing that the plaintiff was actually exposed to asbestos because of the defendant's activities.  (*Casey*, *supra*, 206 Cal.App.4th at p. 1230.)  Instead, the plaintiff's responses assumed, without evidentiary support, that the dust and debris he encountered contained asbestos.  (*Ibid*.)  The appellate court held that the defendant's sufficiently comprehensive discovery requests and the plaintiff's responses devoid of facts led to an inference that the plaintiff could not prove causation.  (*Id*. at p. 1231.)  Thus, the burden shifted to the plaintiff to establish a triable issue of material fact regarding exposure.  (*Ibid.*)

Here, CalPortland presented evidence that it manufactured and sold only one asbestos-containing cement product. That product was called Colton gun plastic cement. At the same time that CalPortland manufactured Colton gun plastic cement, it also manufactured a cement which did not contain any asbestos. That product was called plastic cement. Plastic cement and Colton gun plastic cement were two different products. All of these facts were undisputed.

CalPortland showed that plaintiff identified the product for which CalPortland is liable as "CalPortland Plastic Cement." Loren was the plaintiff's sole product identification witness with regard to CalPortland. Loren testified that he used CalPortland plastic cement and recalled seeing that product at the jobsites where he worked. Loren did not recall ever seeing the Colton gun plastic cement brand name. He never saw a bag of cement used for exterior plastering that had the word "gun" on it. He first heard of Colton gun plastic cement when he was deposed in this lawsuit in May 2009. In addition, Loren could not say whether he had any information that he was ever on a job where anybody used Colton gun plastic cement. He did not have any documents or witnesses that could help him determine whether he ever encountered Colton gun plastic cement on a job. Thus, this case is factually distinguishable from *Hernandez v. Amcord, Inc*. (2013) 215 Cal.App.4th 659 (*Hernandez*), where there was evidence the decedent worked with the defendant's asbestos-containing product many times and dust from the defendant's product got on his face and clothing when he worked with it. (*Id*. at pp. 673-674.)

CalPortland's summary judgment motion also relied on Loren's responses to special interrogatories from CalPortland. In response to a special interrogatory requesting all facts supporting the contention that Loren was exposed to an asbestos-containing product for which he contends CalPortland is responsible, Loren did not say he was exposed to Colton gun plastic cement. Instead, he "allege[d]" he was exposed to "CalPortland plastic cement products" on various jobsites throughout his work in

8

different construction trades during the span of over 30 years. Referencing his deposition testimony, he said he personally used a CalPortland plastic cement product once and worked near others who used CalPortland plastic cement products. The cited deposition testimony related to CalPortland plastic cement and CalPortland cement. No reference was made in that deposition testimony to Colton gun plastic cement or asbestos.

Unlike the limited discovery conducted by the defendant in *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1442 (*Weber*), a case plaintiff says is similar to this one, CalPortland's discovery questions to Loren are comprehensive and sought to elicit information about the bases for CalPortland's alleged liability to plaintiff for exposure to asbestos. Loren's responses to CalPortland's questions do not provide facts showing exposure to an asbestos product. Loren had a statutory duty to provide complete and straightforward answers to CalPortland's discovery questions. (*Andrews v. Foster Wheeler LLC, supra*, 138 Cal.App.4th at pp. 106-107 [the plaintiffs cannot play " 'hide the ball' "]; *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 76.) But unlike the plaintiff in *Weber*, Loren (plaintiff's only product identification witness) did not say he encountered CalPortland's asbestos product and he admitted having no documents and no knowledge of any person that could help him determine whether he ever encountered a CalPortland asbestos product. (*Weber, supra*, 143 Cal.App.4th at p. 1436.)

CalPortland's discovery questions and Loren's responses raise an inference that plaintiff cannot prove the element of causation. (*Casey*, *supra*, 206 Cal.App.4th at pp. 1229-1231.) CalPortland's showing shifted the burden of production to plaintiff. (*Andrews v. Foster Wheeler LLC, supra*, 138 Cal.App.4th at p. 107; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1101, 1103-1104 (*McGonnell*); *Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1285, 1289 (*Hunter*), disapproved on another ground in *Aguilar, supra*, 25 Cal.4th at p. 854, fn. 23; *Smith v.*

9

*ACandS, Inc*. (1994) 31 Cal.App.4th 77, 88-89, disapproved on another ground in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245.)

Nonetheless, plaintiff argues CalPortland did not satisfy its threshold burden because it did not set forth all the material evidence, particularly Loren's description of the CalPortland cement product he encountered. But the cases plaintiff cites -- *Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732 and *Harbour Vista, LLC v. HSBC Mortgage Services Inc*. (2011) 201 Cal.App.4th 1496 -- do not hold that the failure to set forth all material evidence necessarily defeats a threshold burden. We cannot say that any omission by CalPortland was an attempt to mislead the trial court about the state of the discovery record, as plaintiff suggests. In any event, as we explain, Loren's deposition testimony would preclude a reasonable trier of fact from finding (without speculating) that Loren was exposed to Colton gun plastic cement.

In opposing CalPortland's summary judgment motion, plaintiff produced evidence that the cement to which Loren was exposed was similar in appearance, function, application and packaging to Colton gun plastic cement. Loren said the cement product he encountered was a gray powder that was mixed with sand and water and was packaged in 94-pound, brown paper bags. The bags contained the words "California Portland," "Cal Portland," "plastic" and/or "cement." The product was applied by hand or gun to the outside walls of a structure as an exterior plaster.

Like the product Loren described, Colton gun plastic cement was gray in color and looked like dry cement. Colton gun plastic cement had to be mixed with sand and water prior to use. It was sold in brown, 94-pound bags in the early 1970's. In addition, it could be applied with a gun or a trowel. It was primarily used to plaster the outside of structures.

Plaintiff argues the similarities between the product described by Loren and Colton gun plastic cement are sufficient to raise a triable issue as to whether Loren was exposed to Colton gun plastic cement. But on the evidence presented, guesswork is

10

required for the trier of fact to conclude that the product Loren encountered was Colton gun plastic cement. Loren admitted he never heard of Colton gun plastic cement. Whereas Colton gun plastic cement was packaged in bags which were labeled "Colton Gun Plastic Cement," Loren never saw the word "gun" on a bag of cement. Confronted with a "[s]tate all facts" interrogatory, Loren did not state facts showing that the plastic cement which he encountered contained asbestos. Plaintiff does not claim that further discovery may produce evidence of exposure to Colton gun plastic cement, as opposed to the asbestos-free plastic cement. (Code Civ. Proc., § 437c, subd. (h) [authorizing continuance to permit party opposing summary judgment to obtain affidavits or conduct discovery in order to present evidence].) The allegations of exposure contained in Loren's special interrogatory response do not raise a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

Although a party may rely on reasonable inferences drawn from direct and circumstantial evidence to satisfy its burden on summary judgment, we do not draw inferences from thin air. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483 (*Leslie G.*); *McGonnell, supra*, 98 Cal.App.4th at p. 1106 [speculation about exposure to defendant's asbestos product is insufficient].) Likewise, a mere possibility that Loren was exposed to Colton gun plastic cement is not enough to create a triable issue of fact. (*Saelzler, supra,* 25 Cal.4th at pp. 775-776, 781; *Casey*, *supra*, 206 Cal.App.4th at p. 1237.) The evidence here could not reasonably permit a trier of fact to conclude that the product to which Loren was exposed was more likely than not Colton gun plastic cement. (*Leslie G.*, *supra*, 43 Cal.App.4th at pp. 483, 488 [to resist summary judgment, the plaintiff must show that the inferences favorable to her were more reasonable or probable than those against her; the plaintiff cannot survive summary judgment simply because it was possible that her rapist might have entered through an allegedly negligently maintained gate].) This case does not involve equally conflicting evidence or inferences.

Plaintiff claims there is no evidence that the product Loren described is consistent with the asbestos-free CalPortland plastic cement. Not so. There was evidence that all Colton cement products, which included the non asbestos-containing plastic cement, were packaged in brown bags, like the cement product Loren described. Loren said the cement product he was exposed to was used for masonry and applied to outside walls as an exterior plaster. Likewise, CalPortland's plastic cement was used as stucco and for hand plastering and masonry. The product Loren described could be applied by hand or a gun. CalPortland sold a "hand plastic cement" that could be applied by a gun. That product, like the product Loren described, is mixed with sand.

Even viewing all of the evidence submitted in the light most favorable to plaintiff, we conclude that summary judgment for CalPortland is proper. (*Casey*, *supra*, 206 Cal.App.4th at pp. 1237-1239; *McGonnell, supra,* 98 Cal.App.4th at pp. 1104-1105 [no triable issue of material fact regarding exposure where there was no evidence that the defendant's product, which might have been used at the plaintiff's workplace, contained asbestos]; *Garcia v. Joseph Vince Co.* (1978) 84 Cal.App.3d 868, 874-875 [nonsuit in favor of the defendant was proper where the jury would be required to speculate as to which entity manufactured the allegedly defective product]; *Lindstrom v. A-C Product Liability Trust* (6th Cir. 2005) 424 F.3d 488, 497-498 [no triable issue of fact regarding causation where the defendant manufactured asbestos-containing as well as nonasbestos-containing products and the plaintiff's witnesses could not tell whether any material the plaintiff handled contained asbestos].)

II

Plaintiff also argues that Kaiser Gypsum did not satisfy its threshold burden on summary judgment and, thus, the burden of production did not shift to plaintiff.

Plaintiff alleges that Loren was exposed to an asbestos-containing, premixed Kaiser Gypsum joint compound during his career in the construction trades, which spanned from 1954 to 1995. Kaiser Gypsum began manufacturing an asbestos-

12

containing, premixed joint compound called "Pre-Mix Joint Compound" in 1959.[2]  It stopped manufacturing and selling any product that contained asbestos in early 1976.  And it ceased all manufacturing and sales operations in 1978.  Plaintiff says it is reasonable to infer that Loren could have encountered Kaiser Gypsum joint compound as late as 1979 because there was likely some inventory of Kaiser Gypsum joint compound in use after Kaiser Gypsum ceased operations.  Plaintiff deduces that Loren's potential period of exposure to Kaiser Gypsum joint compound is approximately 21 years: 1959 through 1979.  Plaintiff further deduces that Kaiser Gypsum joint compound contained asbestos for 17 of the approximately 21-year potential exposure period.  Thus, plaintiff continues, there is a greater than 50 percent chance that the Kaiser Gypsum joint compound Loren encountered contained asbestos.  Plaintiff maintains the above facts raise an inference of exposure under a preponderance of the evidence standard, regardless of Loren's inability to recall the exact dates when he saw premixed Kaiser Gypsum joint compound at a jobsite.

We conclude Kaiser Gypsum met its initial burden of production by making a prima facie showing that plaintiff does not have, and cannot obtain, evidence necessary to show exposure to an asbestos-containing Kaiser Gypsum joint compound.

Kaiser Gypsum submitted Loren's deposition testimony and interrogatory responses and the declaration of George Kirk in support of its summary judgment motion.  Kaiser Gypsum's evidence shows that it began selling an asbestos-free joint compound in 1974; by the end of 1975 it had removed asbestos from all but one joint compound product that it manufactured and sold; and it stopped manufacturing and selling any product that contained asbestos in early 1976.  Loren testified that he saw premixed

_____

[2]  Kaiser Gypsum manufactured a dry or powder form joint compound prior to 1959. Loren recalled seeing a Kaiser Gypsum joint compound in the premixed form.  He did not recall seeing a Kaiser Gypsum joint compound in the dry form.

Kaiser Gypsum joint compound at jobsites "over the years." He said there were numerous times when he (a) worked around others who used or sanded Kaiser Gypsum joint compound, (b) performed cleanup work after the product was used, and (c) breathed in the dust created from such work. However, Loren had no idea whether any of the Kaiser Gypsum joint compound that he encountered contained asbestos. Of significance, Loren could not identify any particular year when he saw Kaiser Gypsum joint compound on a jobsite.

Plaintiff does not dispute that Loren knew of no documents or witnesses which would show whether he was exposed to asbestos from a Kaiser Gypsum product. Loren also could not remember the name of any person who employed him or who worked with him when he saw Kaiser Gypsum joint compound on a jobsite.

Further, Loren did not know the complete name of any Kaiser Gypsum joint compound product that he encountered. Other than the word "Kaiser," he could not remember any logos, symbols or wording on any of the cartons of Kaiser Gypsum products he saw. In response to a special interrogatory asking him to describe each Kaiser Gypsum asbestos product to which he was exposed, Loren did not state that any packaging of a Kaiser Gypsum product to which he was exposed referenced asbestos.

In response to a special interrogatory seeking all facts supporting the contention that he was exposed to asbestos from a product bearing the name Kaiser Gypsum, Loren "allege[d]" he was exposed to asbestos from Kaiser Gypsum joint compound products during his years of working on various construction sites in and around Sacramento or Northern California. Although he was required to provide a complete and straightforward answer to Kaiser Gypsum's interrogatory (*Andrews v. Foster Wheeler LLC, supra*, 138 Cal.App.4th at pp. 106-107), Loren did not specify when he encountered Kaiser Gypsum joint compound on a jobsite. The pages of his deposition testimony in the record do not set forth facts showing that any Kaiser Gypsum product Loren encountered contained asbestos. Loren admitted he had no idea whether any of the

14

Kaiser Gypsum joint compound that may have been at any of his jobsites contained asbestos. Another interrogatory specifically asked Loren to identify the date and location of each alleged exposure to an asbestos-containing Kaiser Gypsum product. Loren responded to that interrogatory with mere allegations.

Viewed in the light most favorable to the plaintiff, the evidence Kaiser Gypsum presented shows that the Kaiser Gypsum product Loren encountered was asbestos-free if Loren encountered that product after early 1976. However, Loren could not pinpoint when he encountered Kaiser Gypsum joint compound. Specifically, he did not say he encountered Kaiser Gypsum joint compound during the first 22 years of his career in construction, i.e., 1954 through 1976. Loren's incomplete responses to comprehensive discovery questions are sufficient to shift the burden on summary judgment on the issue of causation. (*Andrews v. Foster Wheeler LLC, supra*, 138 Cal.App.4th at pp. 104-107; *Hunter*, *supra*, 37 Cal.App.4th at pp. 1285, 1289-1290.) *Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409 (*Lineaweaver*) is not a factually similar case because there was no dispute in *Lineaweaver* that the defendant-supplied product contained asbestos and it was reasonable to infer from the evidence presented that plaintiff Lineweaver encountered the defendant's asbestos product. (*Lineaweaver, supra,* 31 Cal.App.4th at p. 1419.) *Hernandez, supra*, 215 Cal.App.4th 659, a case where there was evidence of exposure to the defendant's asbestos-containing product, is also factually distinguishable. (*Id*. at pp. 673-674.)

Plaintiff must prove the fact, not the date, of exposure to establish causation. Even under the most lenient causation standards, however, plaintiff must present evidence that would allow a reasonable trier of fact to find more likely than not that Loren encountered an asbestos-containing Kaiser Gypsum product. (*Smith v. ACandS, Inc.*, *supra*, 31 Cal.App.4th at p. 89.) In opposing Kaiser Gypsum's motion, plaintiff asserted that Loren was exposed to Kaiser Gypsum joint compound numerous times from the mid-1950's to 1995. But the pertinent question is not whether Loren was exposed to Kaiser

15

Gypsum joint compound. The pertinent question is whether Loren encountered an asbestos-containing Kaiser Gypsum joint compound. As to the latter question, plaintiff did not set forth any fact showing that Loren encountered an asbestos-containing premixed joint compound manufactured by Kaiser Gypsum.

Loren's inability to say when he encountered Kaiser Gypsum joint compound is significant because, as plaintiff acknowledges, the date of the encounter would tend to indicate whether the product Loren saw contained asbestos. Plaintiff did not ask for a continuance of the summary judgment motion or indicate in any way that it could obtain needed evidence. Without any fact showing when Loren was exposed to Kaiser Gypsum joint compound, the trier of fact could not reasonably infer that Loren was more likely than not exposed to asbestos attributable to Kaiser Gypsum. (*Aguilar, supra*, 25 Cal.4th at p. 843 [in ruling on a summary judgment motion, we consider inferences reasonably drawn from the evidence].) On this record, there is no triable issue of fact as to exposure. (*Hunter*, *supra*, 37 Cal.App.4th at pp. 1289-1290; *Lindstrom v. A-C Product Liability Trust, supra,* 424 F.3d at pp. 497-498.)

Plaintiff nonetheless argues there is a reasonable probability, i.e., a greater than 50-50 chance, that Loren encountered an asbestos-containing joint compound because Kaiser Gypsum manufactured or sold such product for 16 years (1959 to 1975) and its asbestos-free joint compound was likely in use for only three years (1976 to 1979). Plaintiff cites *Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3d 696 (*Simmons*), *Jones v. Ortho Pharmaceutical Corp*. (1985) 163 Cal.App.3d 396 (*Jones*), and *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487 (*Bromme*) for the proposition that there was a greater than 50 percent chance that Loren was exposed to a Kaiser Gypsum asbestos product.[3] Evidence pertaining to reasonable medical probability of causation, as

_____

[3] Plaintiff also cites *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, but only for a definition of preponderance of the evidence.

16

opposed to exposure, was presented in the cited cases. But those cases are inapposite because the kind of evidence presented in those cases was not presented here. In *Simmons*, it was undisputed that a genetic test, which the plaintiffs claimed the defendants neglected to provide, would detect Down's Syndrome in only 20 percent of pregnant at-risk women under the age of 35. (*Simmons, supra,* 212 Cal.App.3d at pp. 700, 702-703.) In *Jones*, the plaintiff's medical expert testified there was a less than 50-50 chance the defendant's drug contributed to the development of the plaintiff's cancer. (*Jones, supra*, 163 Cal.App.3d at pp. 401-404.) In *Bromme*, the expert witnesses agreed the decedent's chance of surviving colon cancer was less than 50 percent after a certain date. (*Bromme, supra,* 5 Cal.App.4th at p. 1499.) Similar evidence is not present here.

Plaintiff also complains that Kaiser Gypsum did not disclose in its papers that it manufactured and sold an asbestos-containing premixed joint compound from 1959 through 1975, that it ceased all manufacturing operations in 1978, and that its product sales occurred between 1952 and 1978. Those facts, however, do not raise a triable issue of material fact regarding causation. As we have explained, Kaiser Gypsum made a prima facie showing that plaintiff does not have and cannot obtain evidence of exposure to an asbestos-containing Kaiser Gypsum joint compound. And plaintiff failed to present evidence showing that a triable issue of material fact existed as to whether Loren was exposed to asbestos for which Kaiser Gypsum is responsible. Summary judgment for Kaiser Gypsum was properly granted.

We do not separately address Verna's loss of consortium claim because plaintiff does not dispute that a decision in Kaiser Gypsum's favor on Loren's personal injury claims requires summary judgment for Kaiser Gypsum. It is also unnecessary to consider Kaiser Gypsum's alternate argument about whether exposure to asbestos from Kaiser Gypsum joint compound was a substantial factor in causing Loren's illness.

## III

Plaintiff next contends J-MM and Formosa did not satisfy their threshold burden to show that plaintiff cannot prove exposure to an asbestos-containing J-MM product. Plaintiff also asserts J-MM and Formosa failed to establish that J-MM did not have to warn Loren of the dangers and risks associated with J-MM's asbestos cement pipe because Loren was a sophisticated user of asbestos.

We discuss the grant of summary judgment in favor of J-MM and Formosa in the same section because J-MM and its alleged alter ego Formosa moved for summary judgment or summary adjudication on the same grounds. Formosa did not move for summary adjudication based on the lack of an alter ego relationship between Formosa and J-MM.

## A

We begin with plaintiff's argument that J-MM and Formosa did not meet their burden to show that plaintiff cannot prove causation.

J-MM and Formosa asserted in their summary judgment motions that Loren did not testify about any encounters with asbestos cement pipe after 1979, and J-MM is not liable for any claims relating to asbestos cement pipe prior to its formation in 1983. J-MM and Formosa rely on Loren's deposition testimony and interrogatory responses and documents pertinent to J-MM's acquisition of the assets of Johns-Manville Pipe Corporation (Johns-Manville) to support their motions.

There is no dispute that J-MM was formed on January 1, 1983, after J-MM purchased the assets of Johns-Manville. Plaintiff also does not dispute that J-MM is not liable for any asbestos-containing product sold by Johns-Manville prior to the asset purchase.

Loren testified that over the course of his career he saw cement pipes that said "Johns Manville" and "J-M" "many times." In response to a special interrogatory from J-MM asking for the date and location of each alleged exposure to an asbestos-

18

containing product manufactured, sold or supplied by J-MM, Loren recounted his prior deposition testimony that he worked in the vicinity of other workers who installed, cut or "machined" Transite.[4] Loren said he was exposed to the dust created when workers cut Transite. He said Transite was the trade name for Johns-Manville asbestos cement pipe, and he assumed Transite was also the trade name for J-MM asbestos cement pipe because Transite was a name used for asbestos cement pipe. Loren recalled "John Mansville (sic) and then later on there was a J-M on the products." He saw the words "J-M" and "Transite" on asbestos cement pipes. His special interrogatory response described his prior testimony about seeing Transite at jobsites in the 1960's and 1970's. Loren also testified that he saw workers use or install Transite up into the early 1980's.

J-MM and Formosa contend Loren's testimony about seeing other workers use or install Transite up into the early 1980's was vague and made in response to a leading question. But J-MM and Formosa did not object to Loren's special interrogatory answer or his deposition testimony in this regard in their summary judgment papers or at the hearing on their motions. As such, their evidentiary objections are forfeited. (Code Civ. Proc., § 437c, subds. (b)(5) ["Evidentiary objections not made at the hearing shall be deemed waived"], (c) ["the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court"]; Cal. Rules of Court, rules 3.1352, 3.1354.)

J-MM and Formosa also contend it is unclear whether Loren referred to Transite as a generic term for asbestos cement pipe, as opposed to an asbestos cement pipe supplied by J-MM, when he testified about seeing Transite up into the early 1980's. The

---

[4] J-MM and Formosa ask us to disregard Loren's deposition testimony because it purports to "change" his written interrogatory responses. As plaintiff points out, however, Loren's deposition was taken before he answered J-MM's special interrogatories.

record on this point, however, is not unclear. Counsel asked Loren to focus on Transite as a trade name, before asking Loren a series of questions, including whether he saw other workers use or install Transite in the 1980's.

In moving for summary judgment, J-MM argued that Loren's discovery responses indicated he was last exposed to asbestos cement pipe allegedly sold by J-MM in 1979. J-MM and Formosa suggest that pages 1615 and 1616 of Loren's deposition testimony support their contention. Those pages are not in the record. We do not consider evidence that is not in the record in reviewing a motion for summary judgment. (*West v. Sundown Little League of Stockton, Inc*. (2002) 96 Cal.App.4th 351, 363.)

J-MM and Formosa maintain on appeal that Loren could not recall a single jobsite where he worked with or around asbestos cement pipe after 1979. But the evidence J-MM presented indicates that Loren observed other workers use or install Transite up into the early 1980's and that Loren associated Transite with J-MM. Loren recalled seeing "a J-M on the products." There is no evidence that during his deposition, Loren was asked to provide further information about product encounters that occurred in the 1980's and was unable to do so.

J-MM and Formosa argue that the Transite Loren encountered could have been sold or supplied by Johns-Manville or any number of suppliers who supplied similar pipe to jobsites. But there is no evidence that both J-MM and Johns-Manville sold or supplied Transite during the same time period or that there were multiple suppliers of Transite in the early 1980's. As the parties moving for summary judgment, J-MM and Formosa bore the initial burden of showing that plaintiff did not possess and could not reasonably obtain needed evidence. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at pp. 850, 854-855.) J-MM and Formosa did not meet that burden.

Moreover, plaintiff presented evidence that J-MM began selling asbestos cement pipe in 1983. The pipes sold by J-MM contained asbestos and were the same product manufactured and sold by Johns-Manville prior to January 1, 1983, under the trade name

Transite. Jim Reichert testified that as of January 1, 1983, J-MM sold the same Transite asbestos cement pipe that Johns Manville sold prior to January 1, 1983. A trier of fact could reasonably infer from a document used as an exhibit at the deposition of Jim Reichert that J-MM was also known as "J-M," which was a name Loren said he saw on asbestos cement pipes.[5]

J-MM and Formosa liken this case to *Hunter*, *supra*, 37 Cal.App.4th 1282 and *Dumin v. Owens-Corning Fiberglas Corp*. (1994) 28 Cal.App.4th 650 (*Dumin*). There is no fair comparison. The plaintiff in *Hunter* testified he was personally unaware of the defendant's activities at any of the jobsites where he worked. (*Hunter*, *supra*, 37 Cal.App.4th at p. 1289.) Similarly, the plaintiff in *Dumin* could not identify Kaylo, the product for which the defendant was a nonexclusive distributor, as one of the products to which he was exposed. (*Dumin*, *supra*, 28 Cal.App.4th at p. 653.) He presented evidence that Kaylo was customarily used at the shipyard where he worked as one of many asbestos insulation products around the early 1950's. (*Id*. at p. 655.) But there was no evidence that Kaylo supplied by the defendant was used aboard the ship where he worked in 1953 and 1954. (*Ibid*.)

Unlike the plaintiffs in *Hunter* and *Dumin*, Loren identified J-MM and he identified Transite as a product he worked around up into the early 1980's. J-MM sold Transite in the early 1980's. Unlike *Dumin*, where there were multiple suppliers for Kaylo, there is no evidence in this case of multiple suppliers for Transite in the early 1980's.

---

[5] J-MM and Formosa ask us to not consider this document, asserting hearsay, authentication and relevance grounds. The objections are forfeited because J-MM and Formosa did not raise their evidentiary objections in their summary judgment papers or at the hearing before the trial court. (Code Civ. Proc., § 437c, subds. (b)(5), (c); Cal. Rules of Court, rules 3.1352, 3.1354.)

J-MM and Formosa further state, in a cursory manner, that plaintiff must prove "substantial exposure" to J-MM's asbestos-containing product. A plaintiff claiming asbestos-related injuries must prove that exposure to the defendant's asbestos product or activity was, in reasonable medical probability, a substantial factor in causing or contributing to the plaintiff's injury. (*Rutherford, supra,* 16 Cal.4th at p. 982.) To the extent J-MM and Formosa are raising the issue of whether exposure to J-MM's product was a substantial factor in causing plaintiff's injuries, the contention is forfeited because J-MM and Formosa do not present this point under an appropriate heading and they do not support their contention with factual analysis. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656.)

Viewed in the light most favorable to plaintiff, all of the evidence presented demonstrates a triable issue of fact about whether Loren was exposed to asbestos from Transite after J-MM began marketing and selling that product in the early 1980's. Therefore, J-MM and Formosa are not entitled to summary judgment on the issue of exposure.

B

J-MM and Formosa also moved for summary judgment or, in the alternative, summary adjudication on the ground that J-MM had no duty to warn Loren of the dangers associated with using J-MM's product because he was a sophisticated user of asbestos cement pipe. Plaintiff opposed the motion on that ground. The trial court did not rely on the sophisticated user defense in granting summary judgment to J-MM and Formosa. However, J-MM and Formosa rely on the sophisticated user defense on appeal. In addition, J-MM and Formosa contend Loren could not have relied on any representations made by J-MM concerning the character of its product because he had actual knowledge about the potential hazards of asbestos. We may consider J-MM and Formosa's contentions because we review the trial court's judgment if it is correct on any legal theory that was presented to the trial court. (*WRI Opportunity Loans II, LLC v.*

22

*Cooper* (2007) 154 Cal.App.4th 525, 541, fn. 12; *Gordon v. Havasu Palms, Inc.* (2001) 93 Cal.App.4th 244, 255.)

J-MM and Formosa say they are entitled to summary adjudication on plaintiff's failure to warn causes of action because Loren was an experienced professional in the construction trades and he was well aware of the hazards associated with asbestos, obviating a duty on J-MM's part to warn Loren of such hazards.

In general, a manufacturer or supplier has a duty to warn consumers about the dangers and risks inherent in the use of its product.  (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 [manufacturer]; *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64-65 [supplier]; Rest.2d Torts, §§ 388 [supplier], 401 [seller]; CACI Nos. 1205 [strict liability against manufacturer, distributor and seller], 1222 [negligence by manufacturer and supplier].)  A failure to warn gives rise to liability for injuries caused thereby.  (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at p. 64; CACI No. 1222.)  The sophisticated user defense is an exception to the general duty to warn. (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at p. 65.)  The defense concerns warnings and does not apply to a cause of action for design defect.  (*Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 559.)  The sophisticated user defense would apply only to plaintiffs' failure to warn causes of action in the first through fourth counts.  (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at pp. 65, 71, 74 [sophisticated user defense applies to strict liability and negligent failure to warn claims]; *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1313; *Johnson v. Honeywell Internat. Inc.*, *supra*, 179 Cal.App.4th at p. 559.)

Under the sophisticated user defense, a manufacturer is not liable to a sophisticated user of its product for failure to warn about the product's dangers if the sophisticated user knew or should have known of the dangers.  (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at pp. 65, 71.)  The "should have known" portion of the formulation is an objective standard.  (*Id.* at p. 71.)  It examines what is generally known

or should have been known to the class of sophisticated users at the time of the plaintiff's injury. (*Id.* at pp. 65-66, 71, 74.) It does not inquire into the user's subjective knowledge. (*Id.* at pp. 65-66, 71.) "The focus of the defense . . . is whether the danger in question was so generally known within the trade or profession that a manufacturer should not have been expected to provide a warning specific to the group to which plaintiff belonged." (*Id.* at p. 72.) The rationale supporting the defense is that the failure to warn about risks already known to a sophisticated user usually is not a proximate cause of the user's injuries. (*Id.* at p. 65.)

Plaintiff relies on *Johnson v. American Standard, Inc*., *supra*, 43 Cal.4th 56 and *Fierro v. International Harvester Co*. (1982) 127 Cal.App.3d 862 (*Fierro*). In *Johnson v. American Standard, Inc*., *supra*, 43 Cal.4th 56, 61-62, a trained and certified heating, ventilation, and air conditioning (HVAC) technician sued various chemical manufacturers, along with suppliers and manufacturers of air conditioning equipment, for injuries allegedly caused by exposure to phosgene gas, a byproduct of welding air conditioner pipes containing a refrigerant called R-22. The plaintiff alleged that the defendants failed to provide adequate warnings that servicing air conditioning evaporators would expose technicians to the harmful effects of phosgene gas. (*Id.* at p. 62.) The Supreme Court held that the defendants did not have a duty to warn the plaintiff because the danger created by exposing R-22 to high heat was well known within the community of HVAC technicians to which the plaintiff belonged, and the plaintiff could reasonably be expected to know of such hazard. (*Id.* at p. 74.)

The plaintiff in *Johnson v. American Standard, Inc*. completed a year-long course on HVAC systems. (*Johnson v. American Standard, Inc*., *supra*, 43 Cal.4th at p. 61.) He received additional training and certifications, including the highest certification an HVAC technician can receive from the Environmental Protection Agency, after he passed a five-part exam. He was certified to perform welding on large commercial air conditioning systems which commonly used R-22 as a refrigerant. The dangers and risks

associated with R–22 were noted on material safety data sheets (MSDS), which the plaintiff received, and sometimes read, every time he purchased R-22. (*Id.* at pp. 61-62.) The defendant's expert said it was widely known among HVAC technicians that phosgene gas was a toxic byproduct of heating R–22. (*Id.* at p. 74.) The plaintiff's expert likewise said that HVAC technicians knew or should have known of the risk of phosgene gas at the time the defendant manufactured the product in 1965. (*Ibid.*)

The plaintiffs in *Fierro* alleged that the defendant was liable for negligence and design defect in connection with a "skeleton vehicle" sold to their decedent's employer. (*Fierro*, *supra*, 127 Cal.App.3d at p. 865.) A "skeleton vehicle" was a vehicle consisting of only an engine, cab and chassis. Such a vehicle was sold to commercial users who modified it to fit their particular needs. The decedent's employer installed a refrigeration unit to its skeleton vehicle to create a refrigerated truck for handling meat products. (*Ibid.*) It attached a power cable to the refrigeration unit, creating a fire hazard. (*Id.* at p. 866.) The defendant was not involved in the modification of the vehicle. (*Id.* at p. 865.) The decedent perished in a fire when the modified skeleton vehicle he was driving hit a guard rail and flipped, and gasoline spilled from the damaged fuel tanks. (*Ibid.*) The appellate court rejected the claim that the trial court committed instructional error by refusing to give an instruction on the issue of failure to warn. (*Id.* at p. 867.) It concluded the plaintiffs were not entitled to the instruction because they did not plead, and offered no evidence on, the failure to warn issue. (*Id.* at pp. 866-867.)

In dicta, the *Fierro* court said that as a "sophisticated organization," the decedent's employer did not have to be told that gasoline was volatile and it was necessary to cover and protect exposed fuel tanks because sparks from an electrical connection can cause a fire. (*Fierro*, *supra*, 127 Cal.App.3d at p. 866.) The appellate court did not state what facts made the decedent's employer a sophisticated organization. The appellate court noted there was no evidence that any feature of the skeleton vehicle was unique or contained any component or capability which was known to the defendant and which was

25

not known to or readily observable by the decedent's employer. In those circumstances, the appellate court concluded the absence of a warning to the decedent's employer did not increase any danger that may have existed in using the defendant's product. (*Ibid.*)

Here, J-MM and Formosa presented evidence that Loren worked in the construction trades beginning in 1954, and owned two construction businesses. Loren completed an apprenticeship in carpentry in 1963. He obtained a contractor's license from the California Contractors' State License Board in 1976. Loren received information from the contractors' board beginning in 1976 that working with or around asbestos-containing materials could be hazardous to one's health. During the 1976 to 1980 period, Loren saw notices specific to asbestos posted at jobsites.

The duty to warn applies to a defendant's product so that the consumer can refrain from using that particular product or protect against any hazards. (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at p. 64.) The sophisticated user defense exempts the defendant from its obligation to provide users with warnings about the potential hazards of its product. (*Id.* at p. 65.) Here, there is no evidence that Loren had specialized knowledge or training with regard to J-MM's product, Transite. Unlike the certified HVAC technician in *Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th 56, 61, there is no evidence that Loren ever received training or ever read an MSDS concerning Transite. There is also no expert testimony that Loren should have known of the risks or dangers associated with Transite because of his training or work experience. Loren did not recall ever seeing any warnings about the dangers of asbestos on any Transite. He said in response to a special interrogatory asking when he first became aware that defendants' products contained asbestos that he was unaware of the dangers of asbestos associated with defendants' products. We cannot say from the evidence presented that the dangers of working with Transite were obvious at the time. (Contrast *Fierro, supra*, 127 Cal.App.3d at p. 866.)

J-MM and Formosa fail to persuade us that they are entitled to summary adjudication as a matter of law based on the sophisticated user defense or because the lack of warnings was not a legal cause for Loren's injuries. J-MM and Formosa's motion for summary adjudication as to the sixth cause of action for loss of consortium does not require additional discussion because it is premised on the claims that plaintiff cannot establish the essential elements of duty and causation. We will reverse the summary judgment in favor of J-MM and Formosa for the reasons we have stated.

## DISPOSITION

The judgments in favor of CalPortland and Kaiser Gypsum are affirmed. CalPortland and Kaiser Gypsum shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).) The judgments in favor of J-MM and Formosa and against plaintiff are reversed. Plaintiff shall recover the costs on appeal associated with the judgments for J-MM and Formosa only. (Cal. Rules of Court, rule 8.278(a).)


                                                             MAURO            , J.


We concur:


          ROBIE          , Acting P. J.


          HOCH          , J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| VERNA LEE COLLIN,<br><br>       Plaintiff and Appellant,<br><br>   v.<br><br>CALPORTLAND COMPANY et al.,<br><br>       Defendants and Respondents. | C063875<br><br>(Super. Ct. No.<br>34200900045133CUASGDS) |
| VERNA LEE COLLIN,<br><br>       Plaintiff and Appellant,<br><br>   v.<br><br>J-M MANUFACTURING COMPANY, INC.,<br><br>       Defendant and Respondent. | C065180<br><br>(Super. Ct. No.<br>34200900045133CUASGDS)<br><br><u>ORDER OF PUBLICATION</u> |

APPEAL from a summary judgment of the Superior Court of Sacramento, Shelleyanne W. L. Chang, Judge. Affirmed and Reversed.

Waters, Kraus & Paul, Paul B. Cook and Michael B. Gurien for Plaintiff and Appellant.

Berkes Crane Robinson & Seal, Robert H. Berkes, Steven M. Crane and Barbara S. Hodous for Defendant and Respondent CalPortland Company.

Horvitz & Levy, Lisa Perrochet, Dean A. Bochner, DeHay & Elliston and Jennifer Judin for Defendant and Respondent Kaiser Gypsum Company, Inc.

Walsworth Franklin Bevins & McCall, Helen M. Luetto and Ingrid K. Campagne for Defendants and Respondents J-M Manufacturing Company, Inc. and Formosa Plastics Corporation USA.

THE COURT:

The opinion in the above entitled matter filed July 1, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

          ROBIE          , Acting P. J.

          MAURO          , J.

          HOCH          , J.