Filed 6/10/21  Perez v. Pacific Gas & Electric CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JUAN M. PEREZ,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY et al.<br><br>　　　Defendants and Respondents. | A151868<br><br>(San Francisco County<br>Super. Ct. No. 14-543168) |

Plaintiff Juan Perez contracted Valley Fever during a period of time when he was working as a power utilities inspector for defendants Pacific Gas & Electric Company (PG&E) and Snelson Companies, Inc. (Snelson) at jobsites in Kern County and Kings County, areas that are endemic for the fungus that causes the illness.  This appeal is from a summary judgment in favor of defendants on plaintiff's complaint for negligence, which alleged that defendants failed to warn him about, and take measures to minimize, his risk of exposure to the fungus.  Plaintiff contends the trial court abused its discretion in finding his expert witness's opinions speculative and erred in finding he failed to establish a triable issue of fact on causation.  We affirm.

## BACKGROUND

Plaintiff began experiencing symptoms of illness in late January 2014 and was diagnosed with Valley Fever (coccidioidomycosis) in March 2014.

1

Valley Fever is caused by the naturally occurring soil fungus Coccidioides immitis (the "Cocci fungus"), which is endemic to parts of the southwestern United States. Illness occurs when spores are inhaled after becoming airborne due to disturbance of the soil, and can be caused by as few as one to 10 spores. The spores are microscopic and can remain airborne for extended periods of time; they may be present in ambient dust or in air free of visible dust; they may be carried long distances by wind; and they may be transported to nonendemic areas after settling on objects such as clothing or equipment. Symptoms of Valley Fever typically develop one to three weeks after exposure. Based on this accepted incubation period, the parties' experts agreed that the likely period of exposure for plaintiff was late December 2013, to early February 2014, more likely January to early February.

Between March 2013 and the end of February 2014, plaintiff worked as a power utilities inspector, testing and inspecting work on a natural gas pipeline by defendants, primarily in Kings and Kern Counties.[1] This is a "highly endemic" area for Valley Fever; Kern County is the most endemic, and has by far the most cases of counties in California. Plaintiff's work put him in close proximity to soil disrupting activities including excavation, regrading, backfilling and recompacting. From October 2013 through February 2014, plaintiff lived in a trailer at recreational vehicle (RV) parks in Kern County; in December 2013 and January and February 2014, while living in an RV park in Lost Hills, he would eat breakfast out, take his lunch to work, and for dinner, cook or walk to nearby fast food restaurants. He drove home to Del Mar, in San Diego County, every two weeks. San Diego County is a "suspected endemic area for Valley Fever. While at home,

---

[1] Plaintiff was employed by Bureau Veritas.

plaintiff would pay bills, "[g]o have some kind of fun" and out to dinner with his wife, and "catch up on yard work," including pulling weeds.

In support of the motion for summary judgment, defendants relied upon the declaration of Ben Kollmeyer, a certified industrial hygienist, who concluded that "the origin of the Coccidiodes spore(s) that caused plaintiff's Valley Fever cannot be determined." According to Kollmeyer, in endemic areas, the Cocci fungus "can grow sporadically in surface soils depending on a variety of environmental conditions that are not well understood." It is "difficult if not impossible" to determine whether the fungus was present in a given soil location because "growth sites within endemic regions are small, widely scattered and not uniform," and presence of the fungus in soil cannot be determined visually. Due to the small size and sporadic distribution of growth sites, there is "currently no reliable or reasonable way to test the soil at a given site" for its presence and "such testing has historically produced low recovery rates in samples from known outbreak sites." Kollmeyer had not seen any evidence "supporting the presence of Coccidiodes in the soil at the December 2013 and January 2014 jobsites as opposed to the soil in the surrounding lands, along plaintiff's routes of travel, or in the lands surrounding the Lost Hills RV Park or Orange Grove RV Park" or concerning the existence of other cases of Valley Fever associated with the jobsites, and the soil at the alleged exposure sites was never evaluated for presence of the fungus or "potentially related soil characteristics."

Kollmeyer stated that a person may be exposed to the fungus during "very short term travel to an endemic region," such as driving through it, and "[s]ince a Valley Fever infection is almost always the direct result of inhalation of airborne spores of Coccidioides, the exact source (home, recreation, work, travel, etc.) of the exposure cannot be determined absent

3

scientific data confirming the existence, or likely existence, of the fungus in the soil at issue at the time of exposure (e.g., soils testing data, associated cases)." The areas where plaintiff's jobsites were located, where he lived and through which he traveled, went through "predominately rural areas characterized by exposed soil, agricultural land and dirt roads," and "[a]ny number of activities occurring on this land in a recognized highly endemic area could be reasonably assumed to disturb soil and general ambient soil dust (e.g., agricultural operations, land development and construction, mining, recreational activities, vehicles on unpaved roads/land)."

Opposing summary judgment, plaintiff offered the declaration of certified Industrial Hygienist James Kapin. Kapin declared that "[b]y far, persons with the greatest risks of inhaling the spores and contracting Valley Fever are those who are in close proximity to activities that involve considerable soil disruption." Involvement in outdoor activities that create dusty conditions in endemic areas "increase the risk for individuals becoming infected," and construction activity such as grading, excavation of soil, backfilling and recompacting previously excavated soil "creates the greatest risks to persons either doing the work or being in close proximity" to it. "The highest rates of Valley Fever have occurred among agricultural and construction workers who are likely to have the greatest chance of exposure if the activity involves being in close proximity to construction or agricultural activity that involves considerable soil disruption." According to Kapin, "human soil-disrupting activity, such as excavation and digging of soil in endemic areas, is the most important determining factor for person's contracting Valley Fever in California," other factors being amount of time traveling in endemic areas, time living in endemic areas, duration of time

4

spent outdoors, participating in recreational activities where soil is disturbed, and duration of time in dusty conditions.

Kapin stated that one of the "scientific methods to determine the source of a worker contracting an occupational disease like Valley Fever" is to examine the person's activities during the period when exposure was probable. After determining the activities and the time and place they occurred, "the likelihood of exposure at each source can be examined to determine which source was more likely than not the cause of the exposure." Kapin stated that during the relevant time period, plaintiff lived and worked in Kern County (a highly endemic area) for 45 days; drove to and from Lost Hills to jobsites in northwest Kern County on 37 days, and to and from Lost Hills to Wasco at various times; drove to and from Kern County to his home in San Diego County eight times; was at his home in San Diego County (a "highly urbanized area") for 27 days; and was at jobsites in Kern County when soil disrupting activity, excavation, backfilling and re-compaction of soil was taking place on 22 days, three times for three to four days in a row.

Kapin believed it was "not probable" that plaintiff was exposed to Cocci spores when driving in Kern County and between there and Del Mar because plaintiff stated in his declaration and deposition testimony that he drove to and from jobsites, and from Kern County to Del Mar, with the vehicle's windows rolled up and air conditioning, heating and air recirculation/filtration options on, which "would have prevented dust or microscopic spores from entering the interior of the vehicles."[2] Kapin opined

---

[2] Kapin declared that driving as plaintiff described was similar to a "generally accepted and recommended safety measure" for preventing inhalation of spores from soil disrupting activities in endemic areas, which is to equip mechanized excavation or grading equipment with an enclosed cab with an air conditioning system with filtration and instruct equipment operators to keep the cab windows rolled up during the soil disrupting

that driving through a region endemic for Valley Fever under these conditions was not a "significant risk factor exposing him to Cocci spores."

Kapin also opined that plaintiff had minimal risk of exposure while inside the RV in which he lived because, according to his declaration and deposition testimony, he kept the windows of the trailer closed, and that plaintiff's risk of exposure was "reasonably improbable" during the "small periods of time" he spent outdoors in Lost Hills, walking to and from restaurants as he described. Because plaintiff did not observe soil disruption activities on surrounding properties on the three days he was at jobsites surrounded by fruit or nut groves and cultivated fields, Kapin stated it was "not reasonably probable" he was exposed to Cocci spores by activities on the adjacent properties.

Kapin believed plaintiff had the "greatest risk" of exposure to spores on 22 work days in December, January, and February, when he spent the entire day (6:00 or 7:00 a.m. to 4:30 p.m.) in close proximity (10 to 20 feet or closer) to extensive soil disruption activity (excavation of soil, backfilling previously excavated areas with previously excavated soil, recompacting the soil) at jobsites in northwest Kern County. In Kapin's opinion, "more likely than not" plaintiff inhaled Cocci spores on one or all of these days, and he had a "higher likelihood" of exposure on these days than while driving or living in Kern County or at home in Del Mar.

---

activities. Kapin noted that in Kern County, plaintiff drove on paved roads, except for 32 days on which he drove about two miles on a dirt road (which is more likely to expose a person to Cocci spores) to get to and from jobsites, and he drove to and from Del Mar on Interstate 5, through "highly urbanized areas" except for in Kern County, northern Los Angeles County and Camp Pendleton in San Diego County.

6

The trial court sustained defendants' objections to Kapin's declaration as speculative and lacking foundation, and granted summary judgment under what it viewed as the controlling authority of *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326 (*Miranda*). The court described *Miranda* as standing for the proposition that "due to the nature of transmission of Cocci spores, where a plaintiff has contracted Valley Fever in an endemic area, threshold exposure requires proof by some scientific test that . . . there were Cocci spores in matter (such as dirt or air) that is attributable to the defendant."

## DISCUSSION

" 'In order to establish entitlement to summary adjudication of a cause of action, the moving party defendant must establish that the cause of action is without merit by negating an essential element or by establishing a complete defense.' " (*Miranda, supra,* 187 Cal.App.4th at p. 1335, quoting *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726–1727.) Reviewing the trial court's grant of summary judgment, we " 'independently examine the record in order to determine whether triable issues of fact exist to reinstate the action,' " viewing the evidence in the light most favorable to the plaintiff, liberally construing the plaintiff's evidence and strictly scrutinizing the defendants' " 'in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. [Citation.]' " (*Miranda,* at p. 1335, quoting *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)

In *Miranda,* the plaintiff's office on the campus of California State University, Fullerton (CSUF) was next to a vacant lot that was used, beginning at the end of May 2005, for stockpiling excess dirt from a large construction project. (*Miranda, supra,* 187 Cal.App.4th at p. 1328.) The plaintiff began to show symptoms of Valley Fever in August 2005, and

7

subsequently sued the contractors for negligence, alleging they kept the dirt pile in a dangerous condition and thereby caused him injury when he breathed particles from the excavated dirt. (*Ibid.*) The trial court granted the defendants' motion for summary judgment. (*Ibid.*)

As in the present case, the defendants submitted a declaration from Kollmeyer stating that " '[s]ince a Valley Fever infection is almost always the direct result of inhalation of airborne spores of the *Cocci* fungus, the exact source (home, recreation, work, travel, etc.) of the exposure cannot be determined absent scientific data, e.g., soils tests, confirming the existence of the *Cocci* fungus in the soil at issue at the time of exposure.' " (*Miranda, supra,* 187 Cal.App.4th at p. 1330.) The plaintiff submitted the declaration of a physician who had authored peer-reviewed articles on Valley Fever, who opined that because the fungus is endemic to Southern California, the absence of testing for it "does not preclude a physician from rendering an opinion, to a reasonable degree of medical probability, that exposure from a certain source of dust from soil was a substantial factor in causing a person's Valley Fever," and that the plaintiff's exposure to dust from the stockpile of dirt was a substantial factor in causing his illness. A declaration from the plaintiff's treating physician in his workers' compensation case noted that CSUF and its insurer had accepted the claim that the plaintiff's Valley Fever was caused by his " 'occupational exposure to dust from soil from an area on the campus of CSUF' " and opined, based on the facts that "exposure to dust from soil is a critical factor in determining the risk for infection" and "manmade activities that create dust from soil will significantly increase the risk of the disease in endemic areas,' " that "to a reasonable degree of medical probability" exposure to dust from the dirt pile was a substantial factor in causing the plaintiff's Valley Fever. (*Id*. at pp. 1331–1332.) Declarations

8

from a certified industrial hygienist and a general contractor discussed the standard of care for stockpiling dirt. (*Id.* at pp. 1332–1333.)

As *Miranda* stated, " '[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical "probability" and a medical "possibility" needs little discussion. There can be many possible "causes," indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury. [Citation.]' " (*Miranda, supra,* 187 Cal.App.4th at p. 1336, quoting *Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402–403.)

Upholding the summary judgment for the defendants, *Miranda* described Kollmeyer's declaration and opinion that "[g]iven that over one-third of the population in the San Joaquin Valley tests positive for exposure to the fungus, and due to the great number of reasons for soil disturbance, 'the exact source (home, recreation, work, travel, etc.) of the exposure cannot be determined absent scientific data, e.g., soils tests, confirming the existence of the *Cocci* fungus in the soil at issue at the time of exposure.' " (*Miranda, supra,* 187 Cal.App.4th at p. 1336.) The plaintiff in *Miranda* "had no such scientific data." (*Ibid.*)[3]

---

[3] The *Miranda* court rejected the plaintiff's attempt to liken his case to asbestos exposure cases, in which a plaintiff is not required to demonstrate " 'that fibers from the defendant's particular product were the ones, or among the ones, that actually produced the malignant growth' " because " 'a

9

Although the plaintiff's experts in *Miranda* opined that there was a medical probability the plaintiff's illness was caused by his inhaling dust from the dirt pile, the reviewing court upheld the trial court's rejection of their opinions as speculative: "While medical and scientific data certainly supported their claim exposure to dust was a critical factor, neither expert accounted for the undisputed facts showing there were other reasonable and likely sources of the fungus spore causing Miranda's injury. Neither expert offered an opinion on whether there was a way to medically or scientifically determine the origins of the infecting fungal spore. Nor did they dispute the fungus grows all over California, the spores become airborne, spores are not visible to the naked eye, spores sometimes can be in dust-free air, spores are not immediately detectible, infection does not always generate symptoms, others working or living near [the dirt pile] were not infected with Valley Fever, and Miranda did not spend all his time near [the dirt pile]. In light of the above undisputed evidence, the fact Miranda was infected, standing by itself, does not create a reasonable inference the dust from [the dirt pile], as

particular asbestos-containing product is deemed to be a substantial factor in bringing about the injury if its contribution to the plaintiff['s] or decedent's risk of probability of developing cancer was substantial.' " (*Miranda, supra,* 187 Cal.App.4th at p. 1338, quoting *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 976–977.) *Miranda* explained that the asbestos cases were not analogous because plaintiffs in those cases " 'must first establish some threshold *exposure* to the defendant's *defective asbestos-containing* products . . . .' " (*Miranda, supra,* 187 Cal.App.4th at pp. 1338–1339, quoting *Rutherford,* at p. 982.) The plaintiff in *Miranda* "established he was exposed to dirt and dust for several months" but "did not establish it was defective, harmful, fungus-containing, or disease-packed dust or air." (*Id.* at p. 1338.) Factors such as the length, frequency, proximity, and intensity of exposure that bear on whether a particular asbestos-containing product is considered a substantial factor in causing a plaintiff's injury do not become relevant unless the plaintiff first makes the threshold showing of "exposure to a harmful product." (See *Miranda*, at pp. 1338–1339.)

10

opposed to another location, was the source of the disease." (*Miranda, supra,* 187 Cal.App.4th at p. 1337.) As "[n]one of Miranda's experts offered research studies, experience, or really any specific factual basis upon which to render an opinion about whether the dirt and dust from [the dirt pile] contained the infecting fungal spore," and they offered no reason why the infecting fungal spore could not have been unearthed from other locations, "[t]heir speculative opinion the source was [the dirt pile] lacked foundation . . . ." (*Id.* at p. 1343.)

Plaintiff contends the present case is different because his expert "examined evidence that Kollmeyer did not" by analyzing plaintiff's daily activities between December 18, 2013, and February 26, 2014, including his living in Kern County and driving to and from PG&E jobsites; the soil disruption activity at the jobsites during this period; agricultural and other construction activity near the jobsites; driving to and from Kern County to San Diego County; and activities in San Diego County. According to plaintiff, Kapin used the scientific method of determining possible sources of exposure to Valley Fever during the period when exposure was probable and then examining "the likelihood of exposure from each possible source" to determine which was "more likely than not" the cause of exposure to spores. By ruling out other reasonable causes, plaintiff argues, Kapin determined it was more likely than not that plaintiff contracted Valley Fever while working in "close proximity" to "extensive human soil disruption activities, excavation, grading, digging and backfilling and re-compaction of soil on 22 days at the PG&E work sites in northwest Kern County between January and February 2014."

The trial court, as we have said, sustained defendants' objections to Kapin's declaration as speculative and lacking foundation. *Miranda* applied the abuse of discretion standard to review of the trial court's ruling on the admissibility of an expert witness declarations. (*Miranda, supra,*

11

187 Cal.App.4th at p. 1335.) It is an open question whether the correct standard of review for evidentiary objections in the summary judgment context is abuse of discretion or de novo. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [question left unresolved]; *Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969, 978 [noting issue].) We would uphold the trial court's decision here under either standard.

Pursuant to Evidence Code section 801, an expert witness's opinion must be "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact" and based on matter " 'of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates.' " " '[T]he matter relied on must provide a reasonable basis for the particular opinion offered,' " and " 'an expert opinion based on speculation or conjecture is inadmissible.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770, quoting *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.) "The *reasons* for the experts' opinions are part of the matter on which they are based just as is the *type* of matter." (*Sargon,* at p. 771.) A trial court may "exclude expert opinion testimony if it is 'based on reasons unsupported by the material on which the expert relies.' " (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 186, quoting *Sargon,* at p. 771.)

Kapin's declaration attempted to rule out other reasonable sources for the spore(s) that caused plaintiff's Valley Fever by comparing the likelihood of exposure during plaintiff's other activities to the likelihood of his exposure at work. The analysis, however, compares *risk* rather than likelihood of causation. Kapin did not dispute that Cocci is endemic throughout the area where plaintiff lived, as well as worked during the relevant time period, that

12

spores can be released by any movement of soil in which they are present, can be present even in dust-free air and can be transported from one place to another on the wind or objects upon which they have settled. He did not dispute that Cocci growth sites can be small and scattered, and did not indicate Cocci had been detected in the soil at any of the jobsites or that others associated with those jobsites had contracted Valley Fever. Indeed, it was undisputed that the soil at the alleged exposure sites was never evaluated for the presence of Cocci or potentially related soil characteristics, and that there was no evidence regarding the existence of other cases of Valley Fever associated with the jobsites.

In essence, Kapin assumed that plaintiff most likely inhaled the Cocci spore(s) that caused his illness at the jobsites because the soil disrupting work at those sites would have a high likelihood of releasing spores that were in the soil, plaintiff spent considerable time in proximity to this work, and plaintiff was not exposed to similarly high-risk activities when he was not at work. Because this assumption begs the threshold question whether the soil at the jobsites in question in fact contained Cocci spores, Kapin's opinion was speculative. Kapin could properly opine that the conditions at the jobsites created a high risk of exposure. But it does not follow that because there was such a risk, Cocci must have been present. As Kollmeyer explained, "[i]f Coccidioides is not in a given soil location, the degree of exposure to that soil dust is not relevant to Coccidioides exposure. However, if Coccidioides is in fact in the soil, then the degree of exposure to that dust would clearly influence the degree of exposure to Coccidioides." Kapin's opinion that other sources of exposure were less likely to have resulted in plaintiff inhaling spores would be meaningful, in this context, only if there were evidence from which to conclude the fungus was in fact present in the jobsite soil.

13

As the *Miranda* court explained, "Miranda submitted evidence the soil, and sometimes the air, in Southern California is known to contain the pathogen causing his disease.  This is evidence from which the jury could link dust inhalation in Southern California and his Valley Fever.  However, there was no circumstantial evidence from which the jury could reasonably infer [the dirt pile in the lot], as opposed to any other specific dirt pile, was the source of the *Cocci* fungal spore that infected Miranda.  [The dirt pile] was only one of many reasonably possible sources of dust that may have contained the pathogen." (*Miranda, supra,* 187 Cal.App.4th at p. 1342.)  Here, the only basis for inferring that plaintiff was infected by spores from the jobsites is the evidence that he was exposed to soil disrupting activities at the sites.  There is no evidence, circumstantial or otherwise, that the soil in fact contained the fungus.

As in *Miranda,* defendants' evidence in support of the summary judgment motion established that there was not a reasonable medical probability plaintiff's Valley Fever was caused by inhaling spores at or from the PG&E jobsites, shifting the burden to plaintiff to create a triable issue of fact on causation.  (*Miranda, supra,* 187 Cal.App.4th at pp. 1336–1337.)  Plaintiff failed to meet this burden, either with respect to whether he could prove the fungus was present in the soil at the jobsites or whether he could prove his illness did not result from inhaling spores elsewhere.  As plaintiff acknowledged in his deposition testimony, the jobsites were among a number of places where he could have been exposed to the Cocci fungus, and "[n]obody can tell" whether he inhaled a spore during his non-working hours in the Central Valley.[4]

_____

[4] Plaintiff was asked in his deposition, "during that period of December, January, and February, you could have been exposed to the fungus that caused Valley Fever in any number of locations.  Among them are the places

14

A federal district court case is further instructive. In *Edison v. Management & Training Corporation* (E.D.Cal. July 19, 2018, No. 1:12-CV-2026 AWI-JLT) 2018 WL 3491675, a prisoner who contracted Valley Fever while housed at a facility in Kern County sued the company that managed operations at the prison, claiming (among other things) that it failed to make the facility safe by continuing ground-disrupting activities that increased the amount of dust in the air ("ground-disruption" theory) and by failing to institute various protective measures such as installing air filters and providing prisoners with breathing masks ("airborne-dust protection" theory). (*Id.* at p. *5.) As to the first of these claims, *Edison* followed *Miranda,* granting summary judgment for the defendant because the prisoner had no scientific data indicating the Cocci spore originated from the prison grounds and the defendant's evidence showed "that the particularly-mobile quality of the spore makes it extremely difficult to determine the patch of ground that birthed the spore." (*Edison,* at p. *7.) As to the claim that the defendant's failure to mitigate prisoners' inhalation of dust was a substantial factor in causing the illness, however, summary judgment was denied, because it was "immaterial whether the offending dust-particle originated from in or outside [the prison] . . . ." (*Ibid.*) Distinguishing *Miranda,* the *Edison* court noted that it was "undisputed where Edison was when he inhaled the spore because he had been housed at [the prison] since 2005, did not test positive for Valley

---

where you worked; is that right?" Plaintiff responded, "It's very hard to be specific. So in general, I am going to say yes." After he acknowledged that no one can see a Cocci spore "blowing around," plaintiff was asked "[s]o there's no way for you to tell us that you breathed one in, in all those hours you sat out there in Central Valley not working; correct?" He replied, "Nobody can tell."

Fever at that time, and remained incarcerated there until he became infected in 2010." (*Edison*, at p. *22.)

The present case is like *Miranda* and the ground-disruption theory of liability in *Edison*. Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.

Costs to defendants.

 

                            _____

                            Kline, P.J.

We concur:

_____

Richman, J.

_____

Stewart, J.

*Perez v. Pacific Gas & Electric Company et al.* (A151868)